## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

AIM IMMUNOTECH, INC.,

                Plaintiff,

v.

FRANZ TUDOR,
TODD DEUTSCH,
TED KELLNER,
JONATHAN JORGL,
WALTER LAUTZ,
ROBERT CHIOINI, and
MICHAEL RICE

                Defendants.

CASE NO.

## COMPLAINT

Plaintiff, AIM ImmunoTech, Inc. ("AIM") brings this action for declaratory and injunctive relief against Defendants Franz Tudor ("Tudor"), Todd Deutsch ("Deutsch"), Ted Kellner ("Kellner"), Jonathan Jorgl ("Jorgl"), Walter Lautz ("Lautz"), Robert Chioini ("Chioini"), and Michael Rice ("Rice"), (collectively, "Defendants") and states as follows:

## PARTIES

1.     AIM is a Delaware corporation registered to do business in the State of Florida, with its principal place of business in Ocala, Florida.

2.     Tudor is an individual, over the age of 18, and a resident of Texas.

3.    Deutsch is an individual, over the age of 18, and a resident of New York.

4.    Kellner is an individual, over the age of 18, and a resident of Wisconsin.

5.    Jorgl is an individual, over the age of 18, and a resident of New York.

6.    Lautz is an individual, over the age of 18, and a resident of California.

7.    Chioini is an individual, over the age of 18, and a resident of Michigan.

8.    Rice is an individual, over the age of 18, and a resident of New York.

## NATURE OF ACTION, JURISDICTION, AND VENUE

9.    This is an action for declaratory judgment and injunctive relief and arises under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and the applicable rules and regulations of the Securities and Exchange Commission ("SEC").

10.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action presents a federal question under 15 U.S.C. Sections 78 m(d) and 17 C.F.R. Section 240.13d-1(a).

11.    This Court has personal jurisdiction over the Defendants pursuant to Florida's Long-Arm Statute, Section 48.193, Florida Statutes, because Defendants engaged in concerted harm—the objective of such group activity being described below—directed towards a company headquartered in Florida. Further, AIM has a permanent injunction against Tudor, discussed in more detail below, in Marion County, Florida. Additionally, each of the named Defendants purposefully availed

themselves of the jurisdiction of Florida by causing certain correspondence to be sent (or participating in or directing the sending of such correspondence), some via hand delivery, to AIM in Marion County, Florida, discussed in more detail below.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the misconduct giving rise to this claim occurred in and caused harm in Marion County, where AIM is headquartered.

## BACKGROUND

13.     AIM is an immuno-pharma company focused on the research and development of therapeutics to treat multiple types of cancers, immune disorders, and viral diseases.

14.     AIM has made significant progress over the past five years with the development of meaningful therapies for cancer patients—including its lead program, Ampligen—and is seeing highly positive interim results from its clinical trials. As of March 31, 2022, the Company has significant cash, cash equivalents, and marketable securities on hand, in excess of $40 million, and has reached significant milestones in 2022—with additional achievements expected over the course of the rest of the year—all of which create motivation for a hostile takeover. These milestones represent an important opportunity to enhance value for shareholders.

## Tudor is in Violation of Injunctions

15.    Tudor is an AIM stockholder that has claimed to own over one million shares of AIM stock and has been involved in insider trading.[1]

16.    On August 13, 2021, Tudor was indefinitely enjoined by a judge in Marion County, Florida from contacting any of AIM's business relations (the "Marion County Injunction").[2]

17.    Upon information and belief, in direct contravention of the SEC Injunction and the Marion County Injunction, Tudor has been soliciting proxies for AIM's annual meeting and claiming to represent some of AIM's largest stockholders in an attempted hostile takeover of AIM's Board of Directors. In several writings Tudor states that, "….I am an AIM shareholder and represent some of AIM's largest shareholders."  Again, seemingly in direct violation of the SEC permanent injunction against Tudor.

18.    Additionally, despite the above injunctions, Tudor has continued to contact AIM's investment bank and AIM's Investor Relations ("IR") firm in a continuing effort to interfere with AIM.

19.    AIM sent notices to Tudor and his counsel demanding he cease from further contact.

---

[1] On August 2, 2011, Tudor was permanently enjoined from violations of Section 10(b) of the Securities and Exchange Act  of 1934 and Rule 10b-5 thereunder (the "SEC Injunction") in a settlement with the SEC after he was investigated and sued for insider trading. Tudor was further barred from association with any investment advisor, broker, dealer, municipal securities dealer, or transfer agent. *See* SEC Litigation Release, attached hereto as Ex. A.

[2] *See* Case No. 21-CA-393, Marion County, Florida.

20.     Tudor ignored AIM's demands, and continued to contact individuals and companies with which AIM has contractual and business relationships.

21.     Moreover, Tudor has surreptitiously engaged in a stockholder group consisting of, at a minimum, Deutsch and Kellner. Upon information and belief, this group also extends to other AIM stockholders that Tudor has indicated he represents, as well as Jorgl, Lautz, Chioini, and Rice.

22.     Based upon his misconduct, and prior criminal history of securities law violations, AIM believes Tudor is engaged in a systematic campaign to disparage AIM management, manipulate and knock down AIM's stock price, and disrupt stockholder relations.

### Defendants have Violated the Law by Failing to Properly Disclose their Ownership of AIM's Outstanding Shares and their Own Relationships

23.     Upon information and belief, Tudor, along with other individuals named as defendants, have violated federal law by failing to file required notices of their stake in AIM and their concerted actions.

24.     Deutsch has claimed in writing that he owns 4.9 percent of AIM's outstanding shares that, when combined with Tudor's claimed ownership shares, exceed 5 percent.

25.     Kellner has further admitted working with Deutsch and to also owning significant AIM stock such that this group—consisting of Tudor, Deutsch, and Kellner—clearly exceeds  5%  of AIM's outstanding shares. Moreover,  Tudor

claims to represent some of AIM's largest stockholders, which, upon information and belief, may include Deutsch and Keller, as well as other stockholders.

26.     A further example of the Group's interconnectivity and willingness to engage in unethical conduct, Deutsch attempted to have Mr. Tudor attend, as an undisclosed party, a telephone conference between AIM's Investor Relations ("IR") firm, Deutsch, and Kellner.

27.     Together, Deutsch and Kellner have an affiliation with Tudor that extends to Tudor's efforts to engage in a hostile takeover of AIM's Board of Directors.

28.      Tudor, Deutsch, and Kellner have not filed a Schedule 13D as required by 17 C.F.R. Section 240.13d-1(a),  which failure to comply is a violation of law.

**Lautz Previously Made a Proposal to Nominate Individuals Including Chioini to AIM's Board—Demonstrating a Clear Connection to Jorgl and Other Defendants**

29.     Additionally, Lautz is  an AIM stockholder and, upon information and belief, a part of the group engaged in the hostile takeover of AIM.

30.     On April 18, 2022, Lautz made a proxy proposal to nominate Chioini and Ring to run for the director positions on AIM's Board of Directors (the "Lautz Proposal"). AIM rejected the Lautz Proposal as flawed, and sought and received affirmation of its rejection from the SEC. [3]

---

[3] *See* attached composite exhibit containing SEC "no action" letter and related correspondence, attached hereto as Composite Ex. B.

31.     After the failed Lautz attempt,  on July 8, 2022, Jorgl, another AIM stockholder, who first purchased 1,000 AIM shares less than two weeks earlier on June 27, 2022, provided AIM a notice of stockholder intent to nominate individuals for election as director at the 2022 annual meeting of AIM's Stockholders (the "Jorgl Notice").[4] The Jorgl Notice also purported to nominate Chioini, the very same individual nominated by Lautz almost three month earlier, as well as Rice, as candidates for election to AIM's Board of Directors.

### The Jorgl Notice Fails to Disclose that the Defendants Constitute a Stockholder Group

32.     The Jorgl Notice is flawed and invalid because, among other defects, it falsely states that Jorgl "is not a party to any agreements, arrangements or understandings with any other stockholders of AIM nor the Nominees nor any other person pursuant to which the nominations are being made," other than "it is expected that the Nominees will pay or contribute to the costs of the solicitation of proxies for their election, including the costs and expenses of the Nominating Stockholder."

33.     These statements in the Jorgl Notice are false because Jorgl and Chioini are part of a group of individuals, which, upon information and belief, includes Tudor, Deutsch, Kellner, Lautz, and Rice, who are acting in concert pursuant to arrangements and/or understandings to take control of AIM for their

---

[4] *See* Ex. C.

own purposes and to the detriment of AIM and its other stockholders, in violation of the SEC Injunction and the Marion County Injunction.

34.    Upon information and belief, the only connection Chioini has to AIM and the remainder of the Defendants is through his lengthy ongoing relationship with Tudor, and through Tudor to Deutsch, Kellner, Jorgl, Lautz, and Rice.

35.    The Jorgl Notice also states that "[a]s of the date hereof, neither Nominee [i.e., Chioini and Rice] own [sic] shares of capital stock of the Company beneficially or of record." This statement is false because Rice and Chioini are part of an agreement, arrangement, or understanding involving Jorgl and other stockholders to act together for the purpose of acquiring, holding, voting or disposing of AIM stock, and therefore, they are deemed to own such stock beneficially.

36.    Upon information and belief all Defendants are working together as a stockholder group with significant beneficial ownership of AIM's outstanding stock in an attempted hostile takeover of AIM's Board of Directors.

37.    Because the statements in the Jorgl Notice described above are false, the Jorgl Notice failed to contain information required by AIM's bylaws. For this and other reasons, the Jorgl Notice violates AIM's advance notice bylaws provisions and SEC regulations, rendering Jorgl's purported nominations invalid, improper, and ineffective. Accordingly, AIM's Board of Directors has rejected the Jorgl Notice as invalid and in violation of AIM's bylaws.

38.     Accordingly, the Jorgl Notice failed to comply with legal requirements related to stockholder groups and nominations.

39.     Because of the material defects of the Jorgl Notice, the Board of Directors of AIM convened a Special Meeting to address the status of the Notice. At that meeting held on July 14, 2022, the Board of Directors voted to reject the Jorgl Notice due to the material misrepresentations.

### Chioini has Behaved in a Manner Unbecoming of a Fiduciary and has a Relationship with Tudor

40.     Tudor and Chioini previously worked together at Rockwell Medical, where Chioini was fired by Rockwell's Board of Directors for misconduct. Chioini's behavior following his termination was highly inappropriate and unbecoming of a fiduciary of a public company. His actions included filing a Current Report on Form 8-K making assertions regarding the independent directors who had voted in favor of his removal and contending that Chioini remained as CEO. Later, as part of Chioini's separation from Rockwell Medical, he agreed to forfeit a total of 313,600 unvested shares of common stock that had previously been issued as a performance-based award.

41.     Further, Chioini and Tudor have had an ongoing relationship following working together at Rockwell—including this current illicit effort to take over AIM.

42.     Moreover, upon information and belief, Chioini—purportedly nominated on both the Jorgl Notice and the Lautz Proposal—and Tudor worked

together at SQI Diagnostics, and both Rockwell Medical and SQI Diagnostics are mentioned in Chioini's biography included in the Jorgl Notice.

43.     Rice—the other purported nominee in the Jorgl Notice—was the founding partner of LifeSci Advisors, an IR firm for Rockwell Medical when Chioini was the Chairman and CEO of Rockwell Medical.

## Causes of Action

### Count I
### VIOLATION OF SECTION 13(d) OF THE EXCHANGE ACT

44.     AIM restates and re-incorporates by reference the allegations of Paragraphs 1 through 43 above as if fully stated herein.

45.     Pursuant to 15 U.S.C. Sections 78 m(d)(1) and (d)(3) and 17 C.F.R. Section 240.13d-1(a), groups of investors are required to file a Section 13D notice with the SEC within ten (10) days of acquiring collective beneficial ownership of more than five percent (5%) of a company's outstanding shares.

46.     Additionally, pursuant to 17 C.F.R. Section 240.13d-5, when "two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the Act, as of the date of such agreement, of all equity securities of that issuer beneficially owned by any such persons."

47.     Defendants Jorgl, Lautz, Tudor, Kellner, and Deutsch have claimed—in various writings—to own shares of AIM's common stock, thereby being

obligated to file 13(d) disclosure and reporting compliance relating to beneficial holdings of the group as a whole.

48.     Moreover, because Chioini and Rice are also part of an agreement, arrangement, or understanding involving Jorgl, Lautz, Tudor, Kellner, and Deutsch (and possibly other stockholders) to act together and in concert for the purpose of acquiring, holding, voting or disposing of AIM stock (including to attempt to nominate and vote for the election of purported director nominees in an effort to take over AIM), they are deemed to beneficially own the stock held by other members of the group.  Jorgl, Lautz, Tudor, Kellner, Deutsch, Chioini, and Rice, together with the other large AIM stockholders Tudor claims to represent, are referred to herein as the "Group."

49.     Despite formal demand by AIM, the Group has not properly notified AIM of their positions by filing the required disclosures with the SEC, or demonstrating that their Group does not contain sufficient ownership level to be required to file such disclosures.

50.     Furthermore, absent injunctive relief, the failure to file a complete Schedule 13D constitutes irreparable harm to AIM and its other stockholders. AIM stockholders are entitled to have a full and accurate understanding of the Group's interests and plans for the Company, and the Group's above-described false and misleading statements deprive AIM's stockholders of the information they need to vote on an informed basis. The Group has made clear their intention to proceed on this basis, and thus this harm is continuing and will likely accrue further.

51. Additionally, the Group's attempted hostile board takeover will also be highly detrimental to the patients AIM is striving to bring new life-saving oncology therapies to market to benefit.

52. The Group has violated, and continues to violate Section 13(d) and Rule 13d-101 of the Exchange Act.

53. AIM has no adequate remedy at law for this violation.

WHEREFORE, AIM respectfully requests this Court permanently enjoining Defendants from committing any further violations of federal securities laws; enter judgment against Defendants in AIM's favor; and grant such other and further relief as this Court deems necessary and proper.

Respectfully submitted this 15th day of July, 2022,

/s/ *Mayanne Downs*
Mayanne Downs
Florida Bar No. 754900
Primary Email Address:
mayanne.downs@gray-robinson.com
Jason Zimmerman
Florida Bar No. 104392
Primary Email Address:
jason.zimmerman@gray-robinson.com
Secondary Email Address:
downs.litigation@gray-robinson.com
Brock Magruder
Florida Bar No. 112614
Primary Email Address:
brock.magruder@gray-robinson.com
Secondary Email Address:
cindi.garner@gray-robinson.com
GrayRobinson, P.A.
301 East Pine Street, Suite 1400 (32801)
P.O. Box 3068
Orlando, Florida 32802

Telephone:  (407) 843-8880
Facsimile:  (407) 244-5690
*Attorneys for Plaintiff, AIM Immunotech, Inc.*